Our second case on the call of the docket today is Agenda Number 12, Case Number 112-052 Innovative Modular Solutions Appellant v. Hazel Crest School District 152.5. Appellant, counsel? Thank you, Your Honor. May it please the Court, my name is Donald Krieger. I am with the firm Schiff Hardin LLP, and together I have my colleague, Ruth Krugly, and we represent the Innovative Modular Solutions, the petitioner appellant in this matter. Your Honor, this case involves four leases which were canceled unilaterally by the defendants in this matter, in particular the authority, and the issue comes up first in my mind whether or not the order, the cancellation is valid and effective, because if it was, of course, then impossibility wouldn't arise. So the first thing we have here is we have to determine whether or not the action taken to cancel the lease unilaterally was a valid action, and of course our stand is that it was not. Doesn't the statute allow the authority to cancel a contract if it finds that there are insufficient funds for it? No, the statute does not allow that, not unilaterally. The statute provides that they have the permission, the word unilaterally is never found in it, to make, cancel, modify, and execute contracts, which is really interesting, because to modify a contract is another contract. To cancel a contract outside the provisions of the contract would necessarily require the other party to agree to it. That is also a contract. So when you say can they make, cancel, modify, and execute contracts, if you insert the word unilateral, which you should not, I suspect it would come in to unilaterally make, cancel, modify, and execute contracts, because all these words, make, cancel, modify, and execute, really attach to the word contracts, or another way of saying it, modify contracts, the term contracts. If you can unilaterally cancel a contract in these words, and you could unilaterally make one, that's kind of like one hand clapping, make one with who? If you can modify, are you saying they could say, well, we'll keep the lease going, we just won't pay, and that's the modification we can do unilaterally? No. If we can cancel the contract, we can do that unilaterally, in other words, we can unilaterally enter into another contract with you, whether you like it or not, to cancel the contract, because we're not canceling it according to the terms of the contract, which is the law under which we act. What should the district have done, realize that what the authority did was improper, and what could they have done? The same thing that anybody does when somebody passes a law that's invalid, if the state had said, you know, all contracts involving leases, no longer can school districts enter into the lease, and we're going to say that all leases that they previously entered into all schools are invalid, that law would have been held invalid, and they would still be liable under their leases. Why couldn't one in between make a difference? Should the district have brought a deck action to assess the validity of what the authority was doing? One of the things they could have done is gone to the attorney general, that was up to them. I don't think necessarily, they don't have to do anything, but once a court is involved in it. Could you have brought suit against the authority? We did, but for the money damages? It's not their contract. Any more than it would be the contract of the Board of Education itself, it's the contract of the school district. Would that suit have been brought in the court of claims against the authority? If we were asking for money from the authority, yes. And you did not do that? No, of course not. So the obligation fell on the district to assess on their own that what the authority was doing was so unreasonable that they had to take action to say, no, you have to fulfill these contracts with IMS. I don't believe they have to take action any more than a treasurer if the regular board had said, don't pay these bills. I mean, this is no different than the authority saying, don't pay your bills. Don't pay this teacher. Don't pay whatever. This is no different than that. They're liable to pay it, and if a court can enter an order that isn't in violation of the law, requiring them to pay damages, that's not impossibility. Impossibility is if this court ruled that you have to sell liquor in your establishment in 1924 or whatever, you have to sell it, you can't order that. You couldn't at that time because it was constitutionally prohibited. Could you help me on this part? I'm going to ask your point as well on this. In Illinois, either as our law stands now or as you think it should be, what are the elements of this defense of impossibility? Basically, the elements are that it has to be objectively impossible to do, and in this case they say it's legally impossible to do. And this court cannot say it's legally impossible. And let me just ask you this. Where do those two elements come from? Case law? Specific cases? A specific case from this court. The case from the Prohibition days? Is that the case you're referring to? The Prohibition case is one where they've cited as an instance, the only instance where impossibility has been used, and that was that the lease involved in that case, that was the Lewis case, I believe. If I remember correctly, and if I don't, I apologize. The Lewis case was one where there was prohibition, and, of course, there was statutory, both constitutional and otherwise, prohibition for selling alcohol. The lease wasn't a lease that they could operate a business. They had to operate a business as a saloon business. I'm not sure why that happened at the time, but I think I can guess. And that is there was talk about prohibition. And so the lease itself said you have to sell it, and so the object of the lease under the law was impossible. The order of the authority, that's not law. They violated the law when they gave the order. The law is the statute here, which gives them whatever authority they have, and certainly if this statute were interpreted to say that it can unilaterally cancel that contract, it seems to me then if it were interpreted that way, then it would be unconstitutional because there was no standards, no standards to say. And so they can pick one, which they did. They can pick one creditor and say I'm not paying you, and another creditor and say they're not. The only other case which would rule not contrary but would fit this is if they went through some kind of bankruptcy procedure where all creditors were taken, and we don't have bankruptcy in this state for them, and this statute wasn't the type of statute that gave them bankruptcy powers. And, in fact, they chose instead of paying the bills, instead of issuing obligations, which the authority could have done to help pay the bills, they chose to violate what their own direction was by that statute and just cancel them. And so in theory that this is we can cancel this, but not some other bond issue, not some other contract or what have you. You mentioned constitutionality. Does a statute pass constitutional muster even though it may substantially impair the contract? It does so for a legitimate public purpose? No. There's no legitimate public purpose here? There is no. I didn't say there's no public purpose. I'm saying there's no public purpose that rises to the level of canceling out a debt obligation of any kind, a contract of this thing, saying that, and, of course, we're going through this nationally and whatever, locally. Is it right or can you cancel out your obligations because you can't pay them? That's never been the case, ever, because you may be able to pay them later. This was a situation where the parties got together and said, look, we're going to cancel this contract. We're going to put the word unilaterally in there. We're going to take the word valid out of the statute and say we're canceling the contract. Do you agree, Mr. Krieger, that the district had no power under the statute to pay on the leases unless it was authorized by the authority? I understand that you're saying what the authority did was problematic, but did the district on their own have power to pay the leases under the statute? The district on their own didn't have power to pay anything on their own. Right. In other words, if a warrant comes up to pay the bills and the authority says you can't pay bills, we're not going to have you pay bills and we're ordering you not to pay the bills, they can't pay the bills. But you still can sue and force them to do that. Back to my point on the proper party here. Under what theory, then, do we issue an opinion that orders the district or says the district should have paid the leases? You have the authority to say those leases were wrongfully canceled and they're in full force in effect, and that order that this court would do or the trial court would do certainly would be accurate and certainly would say that those agreements continue in force in effect and you pay them. Your court order, therefore, is not impossible to comply with because your court order would not be in violation of any statute. So I'm struggling to hear what you're asking us to do. Are you asking us to interpret the statute? Is that your concern? Are you asking us to find it somehow unconstitutional? What are you asking us to do? Well, let's start with the statute because if the statute didn't exist, if the statute allowed this to happen, let's try it another way. Impossibility doesn't come up until you determine that there is some law that prevents them from doing something. Impossibility doesn't come up. So they are relying on a law that says they can cancel the contract because the law says they can. They said to make, cancel, modify, and execute contracts. And so they believe that carries to the effect that it unilaterally, they can unilaterally do this as opposed to by normal agreement and by normal contract provisions. That's what's there. So you're asking us to look at the statute and determine that, I think you maybe suggested this, the words unilateral do not appear in the statute and, therefore, we should not interpret it in that manner? Is that what you're asking us to do? That's the first step. Or are you asking us to say that the statute itself is somehow constitutionally infirmed because it violates the contracts clause? Is that what you're asking us to do? Only if you decide that the statute as it's written allows a unilateral cancellation. So that's the first step. The first step is statutory interpretation. And the reason that statutory interpretation comes up is that the trial court already ruled that the statute doesn't allow this cancellation and that the action was. Isn't the real question here in connection with the legal impossibility, whether the act itself made the leases impossible to perform, not whether the act of the authority rendered the performance impossible? Well, but the act didn't make it because the trial court has. . . No, I'm asking, is that the question? Is that the real question? Yeah, the act itself would have to prevent it, not some misuse of the so-called authority granted by the act. The act itself is the legal prohibition. You wouldn't be violating the act if you ruled that impossibility didn't apply. You wouldn't be violating the act. And the only reason the act is of issue here. . . Let me go back. The trial court ruled that the act was valid because it didn't allow cancellation of the contract in this manner. It didn't allow unilateral. It did say, the trial court did say that, yeah, if it did allow that, there isn't any standards that apply and it would be held. The court would have held it unconstitutional. The appellate court ruled that issue moot and still ruled on impossibility. My point is that impossibility doesn't come up if that issue is moot. I mean, it didn't kind of overrule the trial court, but it made a decision that said you don't have to determine whether it's illegal or objectively impossible. You don't have to determine whether there's some law preventing it. It's still impossible. Well, that is something that has never happened and never should happen because a contract is not invalid because somebody says it is. A contract is invalid because of its terms. A contract isn't invalid because, in other words, the contract was valid. In other words, the court and the trial court really did rule that the contract was valid. But they said notwithstanding that, because they had to listen to the authority, they couldn't have paid it. My answer to that is so what? They don't have to continue listening to the authority. Once the court rules that the contract was valid, there was no valid cancellation, there's no impossibility applying to performance because there's no law preventing it. A wrongful act by a board acting on behalf, in other words, it's just another governing board of that municipality or that entity, that act doesn't protect them. You know, that's where we are. So if we say that the authority had the authority to cancel the lease, where does your argument take us then? Is it a constitutional issue? First of all, you'd have to get by both questions, I would assume, before you would determine whether the authority had to cancel the lease. If you determined that the act didn't allow a unilateral cancellation, there is no constitutional issue. But if we determine that the act allows unilateral cancellation? Then the constitutional issue arises. And, Mr. Krieger, are you also saying from your earlier argument that we don't need to get to those questions on Justice Carmichael, the constitutionality or the legal impossibility issue, if we first address the issue of the interpretation of the statute, what cancellation means? Is that the threshold issue? No. Unless I misunderstand you. Let me put it differently. I thought you were saying the appellate court flipped it around. All the appellate court did was hold the decision on the declaratory that the statute didn't allow the cancellation as being moot and still said that impossibility applies. I'm saying as a matter of law in the history of this court, impossibility has never been used unless there is some statutory law that prevents something from occurring, makes it illegal to occur. These leases were never illegal. So my answer to your question is, if you ruled against me, God forbid, on the issue of whether there was a valid cancellation of the lease, impossibility is no longer meaningful, is it? I mean, you're saying the leases are valid and they cancel, not the validity of the lease, but if you say their cancellation is valid, impossibility doesn't come about. That's not even an issue. I'm saying that it has been decided in the trial court and the appellate court holding moot that the action taken was invalid, not because the statute was unconstitutional, but because you should not interpret this statute as allowing a unilateral cancellation. Well, doesn't the contract itself contemplate termination before the end of the term of the lease? Yes, and they could have. And all they're saying, all we're saying now is you want to cancel, you can cancel, but you're still obligated to the damages as provided in the lease. They're trying to cancel not only their obligation to keep up with the lease, they're trying to cancel it not under the terms of the lease and say not only cancel it, but we suffer no, you're not entitled to damages, and no case has ever said that. And by the way, just because they can't pay it, that doesn't mean they can't pay it. I mean, if I were sued and somebody got a judgment against me for $10 million, they could paper their walls with it, but they still get the judgment. Question just for the record. You may not know these record sites offhand, but in looking at the appendix, your appendix, if I understand this right, there's four separate school sites that have four leases that are identical. Yeah, the four leases are identical. They cancel two first. Right. Okay. And is it found at A124 in your appendix, if you know? I mean, that's what I found when I went through it. I think so. There's a provision in ours. You can let us know when you come back on. Okay. I will be glad to. I think it does. I think that's where it is. Thank you. Your time has expired. Yes. Now, for the record, before the time starts, I understand you've agreed to split, and you're aware of the time division? All right. May it please the Court, Counsel. Good morning. My name is Ken Flory, and I'm the attorney on behalf of the Hazel Crest School District. As you stated, our time, 20 minutes, will be split. I will be taking eight minutes, and Carl Elitz, on behalf of the state agency, will be taking 12 minutes. I'm here with Nancy Rogers, co-counsel on the case, on behalf of the school district. This case presents polar opposites and extremes. We have, on one end of the spectrum, we have an ordinary rental agreement between Hazel Crest School District and Innovative Modular Solutions. On the other hand of the spectrum, at the other extreme, we're faced with an extraordinary series of events and an extraordinary defense that applies to these events. First, the contract. As stated, the school district and Innovative Modular entered into contracts for mobile classrooms. These are classrooms that move from location to location. When one school district is done with those, they're given to another school district and released or resold, which has occurred after the mobile classrooms left Hazel Crest School District. And that's a critical point, very critical, because when the authority canceled the leases, and that is the most critical point here. The authority took the action. The authority is a state agency that took action to cancel the leases. And the relationship between the authority and the school district is also critical. The school district is subordinate to the authority. Once the General Assembly approved the School Finance Authority Act and the authority took over complete control, absolute control over the school district finances, the school district was powerless to take any action. Whether that action by the authority was legal, whether the action by the authority was constitutional, the school district could take no action contrary to that order. If the statute would give financial control to the authority so as to permit the district to meet its obligations to creditors and holders of debt, in that way, doesn't the statute imply that obligations such as the contractual one here must be met? And if it is not met, wouldn't that cause vendors to avoid doing business with them? It would not. You have to understand the facts coming in. The actions that the authority had to take, the school district was over $6 million in debt with a $14 million budget. The school district had $700,000 of unpaid bills. The school district could not make payroll. They were in the midst of a financial collapse, a financial crisis when the authority came in. The authority came in with large amounts of money of state funds to rescue the school district and keep the schools open in the fall of 2002. Does that mean the obligation no longer exists because they were in debt? Not because they were in debt. The obligation to continue performance of an executory contract is excused under the impossibility defense. Where is the authority for the impossibility? The authority for the impossibility defense is black-letter law in Illinois, and there are four cases that discuss the impossibility defense. In response to your question earlier, the elements of the impossibility defense. First of all, it's an equitable defense. But it's performance impossible, not whether it's a legal impossibility. Performance must become impossible because of governmental action. And if the governmental action causes performance in this case, the governmental action is the order of the school finance authority to terminate the leases, to cancel the leases as authorized by the statute. It becomes impossible for the school district to do anything other than comply with that order. But that's a little different than what you just explained. You were explaining that it was factually impossible because there were no funds. It was impossible for the school district to do anything that obeyed the order of the school finance authority. The school finance authority controlled the school district. The school district is a secondary actor, a subordinate body to the school finance authority. A formerly independent elected board of education became advisory, became secondary, became subordinate to the school finance authority. So the authority has unfettered discretion to determine whether a lease should be canceled or not. No, the statute, the Mr. Elitch will go into the justification of the statute for the authority's action. And on behalf of the authority. But the statute does set forth criteria by which the authority must determine whether it is going to cancel a contract or not. But the important perspective from the school district is that order was given and the school district could do nothing. They could not maintain a declaratory judgment action. They had no funds to hire a counsel. They had no funds to make any payments. They are utterly powerless to do anything contrary to the authority's directions. So are you here representing the district or the authority? I represent the school district. The subordinate body here. Who's paying you, the authority or the school district? The school district is paying me with the approval of the authority. No dollar gets spent without the authority's approval. Excuse me. Go ahead. Counsel mentioned that this is akin to a bankruptcy, but none of the protections that's afforded in bankruptcy is present here. No receiver, no adjustment of the creditor's claims. Again, getting to the issue of the justification, whether the action by the authority is legal or not will be covered by Mr. Elitch. However, again, the school district, when it's faced with the direction, has no choice but to follow that. In this case, it's critical to understand that the impossibility defense only can apply to executory contracts where performance is not yet complete. In this case, the narrow facts where the units were returned to the mobile classroom company, they resold them and released them and recovered the monies that would have otherwise been lost. Despite that recovery of the money, they're looking to double dip or recover the remainder of the lease payments while they have sold and released the units. They want interest. They want attorney's fees. They want a cancellation penalty. May I ask you this? In terms of looking at this impossibility defense, it's been raised, you say, four times in the cases. The only time apparently that it's been found to be a defense is in the Prohibition case in 1922. Are you aware of anywhere in the country where a governmental entity has raised this theory as a defense? I'm not aware where the governmental entity has raised the defense. The three cases in Illinois that really address this defense, Levy, not Lewis, as enormously talked about, Leonard, Otto, and M.A. Feldman, and all of these create the black-letter law principle based on Illinois Supreme Court cases and cases from other jurisdictions that if governmental action against renders performance impossible and it's performance by a private or public entity, that's why the facts of this case are unique. Unlikely to be repeated where you have one governmental authority take an action that prevents another governmental authority to perform under a contract. How can you say the district didn't help or didn't create this condition when it asked the authority to come in and then requested they terminate the contracts? In other words, in this Prohibition situation, that's totally independent and away from the actions of the parties. Here, if you weren't, if the school district weren't in a financial meltdown, they wouldn't have had to have the authority to come in to start with. To say that the school district caused this action is just, it's not a correct statement. The school district did not cause, the school district took all steps to educate its students. It took steps to provide classroom space under the severe financial constraints of a south suburban Chicago school district with a low EAV. Isn't the school district supposed to live within its financial means? The school district took, the school board made decisions to put a priority on the education of those students. When those decisions led to the financial collapse, then the State of Illinois stepped in and the state took control, absolute control over the school district and cut the cost. They fired 35% of the staff. They shut five of the ten buildings. They had to cut costs, reduce the budget by over 30% to keep the school district open. And those are the steps that the school district took, that the authority took. I see your light's on. Is the remedy, is the remedy as you see it, a final inaction for money damages in the court of claims against the authority? Absolutely. The actor, the only actor that's accused of wrongdoing is the authority, the authority of the state agency and any monetary damages from the state agency must go to the court of claims. And we ask that you affirm the appellate court and affirm the trial court's decision that the school district could not perform based on the impossibility of defense. Time has expired. Thank you. Good morning, Your Honors. May it please the court, Assistant Attorney General Carl Elitz for the Hazelcrest School District School Finance Authority. Your Honors. Mr. Elitz, let me ask you some questions. Does the school district still exist despite the authority's intervention? Yes, it exists without a checkbook essentially, Your Honor. Who has the taxing, tax levy authority? Your Honor, I believe the authority is its own taxing district. Well, does the school district still have tax levy authority? No. Yes. My co-counsel tells me it does. And is there not a provision for multiple units of government if there were a judgment against a unit of government, there's a separate tax levy to pay judgments? I don't know if there's any. I don't know the answer to that question, Your Honor. There is a statute that provides that judgments against school districts can be paid, that I can tell you. So that would be true despite the intervention of this school authority? Yes, Your Honor. Thank you. Your Honors, in deciding this case, you're going to have to come to the first question as to where to begin. You can begin where the circuit court and the appellate court did with Count 3, or you can do as the plaintiff urges you to do and begin with Counts 1 and 2. I would suggest that you should follow the lead of the lower courts and begin with Count 3 for the reason that you'll get to the same questions that you would get to if you started with Count 1 anyway, assuming you reject the impossibility defense. So I would begin with the impossibility defense in Count 3. If it applies, apply it. If it doesn't apply, then get to the questions that my opponent has urged you to get to, which is how should the statute be interpreted? And if it's interpreted the way I urge you to interpret it, whether that interpretation would violate the Contracts Clause. Lastly, my opponent asks you to get to the question of whether there's been an improper delegation of state authority. So that's the structure, I think, that logically makes sense here. I have arguments which are in my brief. I don't want to get bogged down in them. I don't think that Counts 1 and 2 are properly stated here because the Declaratory Judgment Act requires there to be an actual controversy. And by the time this case went to judgment, there was no relationship between my client, the authority, and the plaintiff. So a declaratory judgment would cause no one to do anything different than the way it was before the judgment. Then, counsel, who would the IMS sue? Who would they go after? Well, it depends entirely on what they want. If they want money damages, then they need to seek them from the party who is obligated under the contract. So that's Count 3. They've brought a bunch of contractors. Your colleague says that they don't have authority to do anything because the authority takes over. And that's his impossibility defense, which I agree with. And that's where we think this case goes. Then anyone who has a contract with the state or a school district wouldn't do business with them if they couldn't sue anybody. That's something that the General Assembly had to balance in passing this particular statute. And as my co-counsel said to your honors, this is an unusual situation. It's fairly unique. I think it's happened four or five times in the state's modern history with regard to taking over a school district. Vendors that do business with the state are at risk. The state could say the police powers here don't allow for us to fill this contract and we're going to set it aside. That doesn't mean that all plaintiffs are without remedies. There is the takings clause, which the plaintiffs have not argued here, which would give them relief if they could show that their property had been taken. They would be entitled to just compensation. Here they're asking for something different under the contracts clause. I don't want to get ahead of myself. Do you concede that in cases where a receiver has been appointed and it seeks to disaffirm a lease and that lease has a damage clause, that the clause is still viable and the lesser liable for the damages? That was the rule under common law when the courts appointed receivers to take over companies. When there was perceived such an important public purpose that the company needed to be continued. And this court has called that an administrative receivership. Typically, or I suppose in my mind a typical situation is, is the business owner flees. The state will come in, run the business for the good of the public. The liability for the business owner who fled is in place. But that common law authority wasn't necessarily limited to that. That was a rule that the courts imposed that allowed for that. They have always talked about this power as one that was subject to the General Assembly's authority. And the General Assembly in this case has not provided for liability for the school district. So although this is a common law power we're talking about, I think the General Assembly has picked it up and has formed it and has said that this particular power with regard to school districts is without limitation. And I certainly agree with my co-counsel when he says that his client is unable to pay a judgment because the checkbook is actually held by my client, the authority. So unlike the receivership of common law or the bankruptcy court, there is no protection for a vendor against basically, there's no guarantee they're going to get treated equally. In other words, they can prefer some vendors and disregard others. I would take that position, yes, Your Honor. As I said, there are constitutional protections for people who believe the state has taken their property. But that's not the claim that this particular plaintiff is making. This particular plaintiff is claiming a contract right. And we know from Supreme Court cases beginning in the 1940s and finishing up in the 1970s and early 80s that contract rights will not trump the exercise of the state's police power in certain cases. That's the second part of my argument. I'd like to talk briefly about the first part, though, if I could. The statute has to be interpreted first. If impossibility is rejected, Your Honors have to decide what that word cancel means. Wouldn't we start with that anyway? I mean the statute itself before we even get into impossibility? Well, Your Honors, the appellate court went a different way. I would urge you to follow the appellate court. There's a certain logic to that. So under the statute first? Yes. Right. But there's also a certain logic to the other side, too, which is if the plaintiff can't get what it's seeking from the defendant regardless, then what's the whole point of going through the analysis? The school district simply cannot pay this judgment. The General Assembly has done that. And so why would the court enter a judgment that can't be paid? My opponent said he wants to paper his walls with it. I just don't think that's something he's entitled to do. Well, I'm perplexed how you can assert that if I understood your answer previously, that the school district would have the authority to execute a tax levy to specifically pay a judgment. I don't believe the school district can do that while the authority is in place, Your Honor. All their financial obligations, all their dealings. Does the statute violate or nullify that provision in the law? I mean I didn't see anything in there. I don't believe it would nullify it, but they have to come to the authority and get leave to do whatever they want to do with regard to their finances. Has the authority canceled all the contracts for the school district? Are you paying some? I'm excluding collective bargaining. I don't believe so, Your Honor. I haven't seen anything like that. This is the only contract that I know of. This contract was entered into. The timing may be important to your analysis. The contract was done in the summer of 2002. And in October, the school district was under a financial oversight panel looking at their finances and trying to decide what to do. That statute wasn't sufficient to pull them out of their financial trouble. And by December, the General Assembly had created my client the authority to take over. So this contract was just before the school district was stripped of all its financial power. When my client came in and looked at this financial situation, they kept the buildings running for a period of years while they increased class size and downscaled the school district. And when the school district became functioning without the buildings, they returned them to the plaintiff. So that's what happened here. And that happened in 2004 and 2005 and 2006. So they used the property without being paid? No, they actually paid for the property while it was being used. It was when the property stopped being essential to the operation of the school district that my client sent notices out to the plaintiff and told them that their contracts were canceled. My opponent urges the court to consider whether the word unilateral is in the contract. That's silly in my mind that the word canceled under this court's prior holdings is straightforward. It means to terminate, to end it. That's what was done here. How much money were we talking on the leases? Your Honor, I was afraid you were going to ask me that. Before I came out, I think we're talking between $400,000 and $500,000 is the claim that the plaintiff has. Does that include the attorney's fees? I don't believe so, but I'm not sure. Maybe my opponent can answer that question. I apologize for not knowing. When you said they were returned, what does that mean? Well, the classrooms are mobile classrooms, Your Honor. Your client physically returned them to their property, or they were allowed to pick them up? I believe, as I've understood it, is they were given notice that the classrooms were not going to be used and that they would not be paying on the lease any longer and that if they wanted to pick them up, they should do that, and they did that. Did they have any expense in doing that? They may have, and I've often wondered why they didn't seek compensation for that under the takings clause. Any time left between the return, actual return, physical return, and releasing? I can't imagine they didn't incur some costs in removing the school district. I don't know what they are or whether they actually did incur them, but removing the classrooms rather than the school district. There's nothing here in the record that I know of, and I suppose that's because there hasn't been a trial on what the damages actually are. Just to clarify in my mind, because the contract did have an early termination feature, which I think provided for some penalties to be paid, is that really what we're talking about? Yes, Your Honor, we're talking about penalties. In the end, Your Honors, I think the interesting question here, the most interesting question is what the contracts clause analysis should be. There has to be an acknowledgment that the contracts clause anticipates that police powers sometimes will trump contracts, and I would suggest that this is one of those cases. The situation that the Hazel Crest School District was facing, everyone concedes, was in a financial emergency. These school children were about to be thrown out of their schools because there wasn't funds to even pay salaries. So it was only the creation of the authority that allowed the school district to continue. When weighing the contract rights at issue in this case, with the police-powered rights that the General Assembly felt were important to be exercised, I would urge the Court to find that this was a valid case in which, although the contract was impaired, it was impaired within the limits of the Constitution. I'll stand on my brief with regard to the improper delegation arguments. I'll just say here that the Stouffer test, this Court's test about whether the statute is sufficiently specific to allow it to withstand constitutional challenges or not, anyone reading the statute would know who it was that was being regulated, what it was, the subject matter of what was being regulated, and what was supposed to happen. Also, I want to make the point that the authority, my client, did make the finding that there was insufficient funds to pay for these contracts, which is a significant finding. Does AMS still have a viable claim against the authority in the Court of Claims? After this proceeding? Probably not for breach of contract, Your Honor, although my co-counsel might disagree with me on that. I mean, we go back and forth about whether the contract liability belongs to him or to my client or to his client. I don't think it matters very much. But I do know that if the plaintiff wants to seek money from the state, my client, the Court of Claims is where he has to go. So your position is the contract action is against the district, not the authority, but there's no money in the district to pay it? Exactly. Well, that's a catch-22, isn't it? If there are no further questions, I'd ask the Court to affirm the appellate court's decision. If not for the reasons the appellate court gave, then for the reasons that I just argued, that there is no contract liability because my client properly exercised its authority and released the school district. Thank you. Justice Thomas, when you mentioned catch-22, I always picture that going over the head of somebody, if you recall that scene in the movie. That's the kind of way I feel here. The argument is that the other side has decided that neither one of them are liable. Let me get a couple of corrections forward for myself. It was Levy, the Levy case, not the Lewis case, which involved the prohibition. Leonard Auto Sales, unlike what they're saying, decided that they weren't going to apply impossibility. They ruled in our favor and said, even though the property was partially condemned for, not partially, it was condemned for a period of time, not for the whole property. They got to use it. The government used it. And, of course, all that case amounted to was they paid the lessee for that period because it was the lessee who had the interest in the property that was compensable, but the lessee was still required to pay under the lease. So the requirements to pay under the lease still existed. Impossibility wasn't implied. The other thing is entering into an obligation where their obligation is to pay, police powers don't enter into it to prevent it because paying us doesn't violate the police power. For example, that school has issued bonds. That school decided to use the proceeds of the bonds to build something, and they did, and what have you, and those bonds are a contract. And they have the police power, of course, if you want to call it that, to operate the schools and to pay and to have teachers and what have you. They didn't cancel those bonds. They didn't cancel any other contract. We were picked out where he's saying it was $400,000 and they were $6 million in arrears, and somehow they're paying those other debts. Somehow they're not defaulting on other debts. And what you have here is they've decided to pick and choose what they want to pay under an act which says their job isn't to cancel contracts. Their job is to enter into contracts and do what they have to do, including canceling contracts if they can negotiate cancellations with people they have, which they never tried to do, in an effort to make sure they don't default on their debt and their obligations. That's what that statute was for. And it was put into place because the previous entity that monitored their finances didn't have the authority to issue bonds, to borrow from the state, to sell bond issues, to put their own credit behind issues that would give money to them. Could they have refinanced these things? Sure. They made no effort with respect to these contracts. And you know what? That really doesn't matter because it's debt. These leases, when you list the debt of the district to see if they've exceeded their debt limit, will be included in that. Under some instances, leases are considered bonds. As an example, in the Bond Authorization Act, long-term leases are bonds. That's why we said the interest level under the lease, they're not liable for at that interest rate because there's another statute which defines these as bonds that limits the interest rate to less. So we've admitted it's less interest. Mr. Krager, Mr. Flory said that the action is really double-dipping since there's been releasing in this. Is your position that that's just a mitigation argument rather than an argument for now? It's my position it's not an argument for now. The question is are we entitled to damages, whatever they might be, including damages, removal, and whatever it costs, and whatever it costs because these things were designed for them. And so on. That hasn't been decided because it was not reached at the trial court level. And I don't know how we can do that here. I suspect that court will be fair and do what's required to be done. But that isn't an issue here. All I'm saying is when you get right down to it, it goes back about 50 years. I can't forget my first contract teacher used to spoon feed us. You always need to have an offer and an acceptance, and you always need to have consideration. The way they're interpreting that statute, they can't enter into a contract because it can't be a contract if they have a right to cancel it at any time. If there's anything, the only way you can have a contract is if you stood across the table, here's the money, here's the project, and the contract is no longer executory. But the truth of the matter is that if you enter into a contract where one side can cancel it at will with no cost, with no penalty, nothing, that isn't a contract. So you're saying they can't make contracts. They can't even say in a contract we're going to waive our right to cancel the contract so that this contract will be binding because the way they interpret the statute, you can cancel that, or you can amend it, you can modify it. They don't even think you can make a contract. We're going to take your property. No, they made no effort to take our property without due process of law. What they've done is cancel the contract. None other picked our person for two, three years, for whatever it was. This so-called receiver, if they want to call it that, accepted that contract. It's been accepted. Those leases were in full force and effect, and they still are. And they canceled the lease, but they never said in the cancellation they're not liable for damages. They never did. In fact, what they said in the lease is we can't pay you, which provides in the lease that once you make a finding that we can't pay you, that violates the lease. And by the way, they're not always going to be broke. Next year, unless they extend it, that entity goes away, and that school is back operating on their own. It's a ten-year period. If there are any other questions, I stand ready to answer them. Thank you. Thank you. Thank you. Case number 112052, Innovative Modular Solutions, Appellant v. Hazelcrest School District, 152.5 Appelese, is taken under advisement as agenda number 12. Thank you for your arguments.